```
          IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND
```

PATRICIA LACOURSE                   *

       Plaintiff           *

    vs.                             * CIVIL ACTION NO. MJG-17-1031

PAE WORLDWIDE INCORPORATED,         *
et al.
                                          *
       Defendants
\*      \*      \*      \*      \*      \*      \*      \*      \*

MEMORANDUM AND ORDER

The Court has before it Plaintiff Patricia LaCourse's (First) Motion to Enforce Subpoena Duces Tecum [ECF No. 1], Plaintiff Patricia LaCourse's Second Motion to Enforce Subpoena Duces Tecum [ECF No. 13], the United States Air Force's Motion to Dismiss [ECF No. 24], Defendant PAE's Motion to Require CT Scan Prior to Disassembly and Further Inspection [mailed to chambers and dated September 14, 2017], and the materials submitted relating thereto. The Court has held a teleconference on the record regarding these motions and has had the benefit of arguments of counsel.

I.    BACKGROUND

On November 6, 2014, Plaintiff Patricia LaCourse's husband, a civilian Department of Defense employee, was killed when the F-16 aircraft that he was piloting crashed. Plaintiff filed the underlying suit against the civilian defense contractor PAE

Worldwide Inc., and others (collectively, "Defendants"), for negligent maintenance of the F-16, in the United States District Court for the Northern District of Florida.[1]

The United States Air Force ("Air Force") is not a party to the underlying case. But, because the Air Force owned the aircraft involved, it retained control of all evidence related to the crash. Patricia LaCourse and PAE (collectively, "the Parties") issued a Joint Touhy Request, followed by two subpoenas, seeking evidence under the Air Force's control.

A. The Crash

Matthew LaCourse, the decedent, was a former fighter pilot in the Air Force with experience flying F-16s. In 2014, Mr. LaCourse died when the plane he was flying crashed into the Gulf of Mexico.

The Parties advance competing views of the cause of the crash. Plaintiff's theory is that the crash was caused by certain problems in the F-16's hydraulic systems, which are responsible for moving the aircraft's flight controls, analogous to the power steering in a car. The F-16's maintenance records show that the aircraft had hydraulic problems in the weeks and days preceding the crash.

Defendants contend that the crash was not caused by any mechanical or hydraulic problems, but was instead due to the decedent

---

[1] Case No. 3:16CV-00170-RV-CJK.

being unable to properly pilot the plane, perhaps due to his health and excess gravity forces shortly before he crashed.

B. Plaintiff's First Motion to Enforce

Plaintiff Patricia LaCourse's (First) Motion to Enforce Subpoena Duces Tecum requested unclassified maintenance instructions (i.e., technical orders, or "TOs") and video footage of the underwater recovery of the aircraft. Pl.'s Mot. at 4, ECF No. 1. The Air Force produced what they allege to be all of the requested items. Air Force's Opp. at 2-3, ECF No. 17.

C. Plaintiff's Second Motion to Enforce

Plaintiff Patricia LaCourse's Second Motion to Enforce Subpoena Duces Tecum [ECF No. 13] requested discovery regarding the hydraulic filter from the aircraft wreckage that was recovered from the Gulf of Mexico.[2]

The record reflects the following facts. On December 9, 2016, the Air Force responded to the Parties' Joint Touhy request by letter. Pl.'s Opp. Ex. A, ECF No. 27-1. This was one of several formal responses by the Air Force. Pl.'s Opp. Ex. B at 1, ECF No. 27-2.

---

[2] During the teleconference held October 30, 2017, the Air Force explained that this filter may actually be a fuel filter and not a hydraulic filter. For purposes of this Memorandum and Order, the Court will refer to this filter as a hydraulic filter.

Notably, in response to the Parties' request to have an "inspection of the aircraft wreckage" and to have an "inspection of the aircraft hydraulic and flight control systems and their component parts to include disassembly," the Air Force stated that the Parties may contact Captain Joel Andreason to arrange inspections. Pl.'s Opp. Ex. A ¶¶ 3-4, ECF No. 27-1. The Air Force did not deny those requests.

On March 29, 2017, counsel for Plaintiff contacted Captain Nicholas Cooper to follow up on some of the requests, including the request for inspection of the hydraulic filter. Air Force's Mot. Dismiss Ex. A at 2-3, ECF No. 24-2. In this email, the Parties outlined a proposed protocol for inspection of the filter. Id. At the time, Plaintiff appeared to be amenable to conducting an inspection on an Air Force base if the right equipment was present, although she stated that she was considering the use of some private laboratories. Id.

On April 5, 2017, counsel for the Plaintiff wrote another follow-up email, this time with specific details about the testing protocols she wished to have followed. See Pl.'s Second Mot. Enforce Ex. F at 1, ECF No. 13-8 ("I have also attached proposed protocols to this email"). In this April email, the Plaintiff explained that it wishes to have its experts conduct a CT scan and other tests on the F-16's hydraulic filter on two separate off-base laboratories equipped to perform such an inspection. See Pl.'s Second Mot.

Enforce Ex. F at 3 and 11, ECF No. 13-8.  This would require first shipping the hydraulic filter from the Air Force base in Florida to a private laboratory in Maple Grove, Minnesota, and then to another private laboratory in Marietta, Georgia.  <u>Id.</u>  The Protocols also laid out procedures for a disassembly of the filter and forensic examination of the filter and any entrapped material.  <u>Id.</u>

Two days later, in an email to the Parties' counsel denying the requests, the counsel for the Air Force stated:

> We have found no precedent where the Air Force relinquished physical custody of Air Force fighter aircraft to private individuals for their private use.  Though we appreciate the measures the parties are looking to set up to facilitate the shipping of our aircraft component(s) outside our installation, we are obliged to maintain full custody and control of Air Force property and not risk the loss of F-16 components.  Should the parties wish to conduct the testing on base under the oversight of our personnel, we can certainly coordinate such additional inspection.  However, as for the request for the Air Force to relinquish its custody and control of our property by placing it in the mail and sending it to private individuals, I am compelled to deny that request as well.  Please let us know if you wish to arrange for the testing to occur on an Air Force installation.

Pl.'s Opp. Ex. B at 3, ECF No. 27-2.[3]  Soon afterwards, Plaintiff

---

[3] The Air Force also submitted an affidavit stating that the specific request that was denied was "Plaintiff's request to ship the Air Force's F-16 hydraulic filter to a private laboratory in Minnesota and Georgia," due to the Air Force's obligation "'to maintain full

5

filed the instant Second Motion to Enforce Subpoena Duces Tecum.

The Court held a teleconference on August 29, 2017 to clarify the requests detailed in the Second Motion to Enforce Subpoena Duces Tecum. During the teleconference, the Court noticed that the Parties appeared to have modified their requests. Following the conference, the Court ordered the Parties to confirm the scope of their requests in writing. See Letter to Counsel of Record at 2, ECF No. 20. Specifically, the Court noted that "the request that was considered by the Air Force and rejected did not include having this examination done at the Air Force facility." Id. at 3.

On September 15, 2017, Plaintiff filed a status report regarding her pending requests. See Response and Status Report, ECF No. 23. In this status report, Plaintiff stated that she was now "willing to forego the CT Scan of the filter before disassembly"[4] and was willing to have the filter inspection and forensic examination to be done at an Air Force facility. Id. ¶¶ 4-6. Plaintiff also added a request to conduct a concurrent disassembly inspection of the Integrated

---

custody and control of Air Force property and not risk the loss of F-16 components.'" Air Force's Opp. Ex. A ¶ 19, ECF No. 18-1.
[4] This change does not appear to have been approved by Defendant PAE Worldwide, because Defendant subsequently mailed to chambers a Motion to Require CT Scan Prior to Disassembly and Further Inspection, requesting that the CT scan step not be skipped.

Servo Actuators ("ISAs") that was not previously rejected in the Air Force's April 7, 2017 email. Id. ¶¶ 7-9.

The Air Force filed the instant Motion to Dismiss, arguing that this Court no longer has subject matter jurisdiction over the action because the Plaintiff is now asserting new Touhy requests that had not been first rejected by the Air Force.

II. LEGAL STANDARD

Pursuant to 5 U.S.C. § 301, executive agency and military department heads "may prescribe regulations for the government of his department, . . . and the custody, use, and preservation of its records, papers, and property." 5 U.S.C. § 301. Section 301 "does not authorize withholding information from the public or limiting the availability of records to the public." Id.

The public may seek information or records in the custody of these agencies through a subpoena pursuant to Touhy regulations.

> Such regulations are commonly known as "housekeeping" regulations . . . . Housekeeping regulations that create agency procedures for responding to subpoenas are often termed "Touhy regulations," in reference to the Supreme Court's decision in United States ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951).

COMSAT Corp. v. Nat'l Sci. Found., 190 F.3d 269, 272 n.3 (4th Cir. 1999). The Air Force is governed by the Department of Defense's

Touhy regulations, 32 C.F.R. §§ 97.1-.6, and its own Touhy regulations found in Air Force Instruction ("AFI") 51-301.

When the government is not a party, the APA "provides the sole avenue for review of an agency's refusal to permit its employees to comply with subpoenas." COMSTAT, 190 F.3d at 274. Otherwise, the government is immune from suit. The APA "waives the government's sovereign immunity from suit and permits federal court review of final agency actions." Id. An agency action is final "only when the action signals the consummation of an agency's decisionmaking process and gives rise to legal rights or consequences." Id. (emphasis in original).

If the agency action is not final, the court may not intervene, except in circumstances that are not applicable here. See 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review"); Flue-Cured Tobacco Coop. Stabilization Corp. v. U.S.E.P.A., 313 F.3d 852, 857 (4th Cir. 2002) (explaining that absent an agency action that is made specifically reviewable by statute, 5 U.S.C. § 704 limits judicial review to final agency actions); Vill. of Bald Head Island v. U.S. Army Corps of Engineers, 714 F.3d 186, 194 (4th Cir. 2013) ("Section 704 of the APA also requires that 'agency action,' to be subject to judicial review, be 'final agency action.'") (emphasis in original).

III. DISCUSSION

The Air Force argues that the precise request that was made by Plaintiff and rejected by the Air Force under its Touhy regulations was detailed in the April 5, 2017 email from John Gagliano to Michael Bordera. Pl.'s Second Mot. Enforce Ex. F at 1, ECF No. 13-8. Specifically, the request was for a hydraulic filter inspection that conformed to Plaintiff's attached Protocols (i.e., requiring a CT scan prior to disassembly, shipping the filter to two private laboratories, and disassembling and inspecting the filter away from an Air Force base). That request was clearly denied by Michael Bordera in the April 7, 2017 email. Pl.'s Opp. Ex. B at 2, ECF No. 27-2.

Plaintiff then changed her request by removing the CT scan step, allowing the filter to be disassembled and inspected on an Air Force base, and adding a request to perform inspection of ISAs at the same time. See Response and Status Report, ECF No. 23. The Court finds that these requests have not been denied by the Air Force.[5]

Plaintiff argues that her original requests, to have an "inspection of the aircraft wreckage" and to have an "inspection of the aircraft hydraulic and flight control systems and their component

---

[5] In fact, the denial email itself included an offer to discuss a possible inspection that would occur on an Air Force base. Pl.'s Opp. Ex. B at 2, ECF No. 27-2 ("Should the parties wish to conduct the testing on base under the oversight of our personnel, we can certainly coordinate such additional inspection.").

parts to include disassembly," are broad enough to cover these now modified requests. Pl.'s Opp. at 3-4, ECF No. 27; Pl.'s Opp. Ex. A at ¶¶ 3-4, ECF No. 27-1. Plaintiff seems to imply that the April 7, 2017 Air Force rejection email was also broad enough to encompass a full rejection of Plaintiff's original requests (for example, that the "flight control systems" includes the ISAs).

However, Plaintiff's arguments are unavailing because the Air Force did not reject the request for an inspection altogether. Rather, the Air Force stated that the Parties may contact Captain Joel Andreason to arrange inspections. Pl.'s Opp. Ex. A ¶¶ 3-4, ECF No. 27-1.

In sum, the only request that has been denied, and which constitutes a final agency action, is Plaintiff's request for a hydraulic filter inspection pursuant to specific protocols attached to her April 5, 2017 email.[6] Pl.'s Second Mot. Enforce Ex. F at 3 and 11, ECF No. 13-8.

Because Plaintiff no longer seeks those specific inspections in private laboratories but now seeks a different inspection on an Air Force base, the Air Force has not yet issued a final agency action

---

[6] Defendant PAE Worldwide claims that the question of whether the Air Force should be compelled to allow the CT scan is properly before the Court. However, even if the Court had jurisdiction over that specific procedure, for the reasons stated on the record, that dispute needs to be resolved together with the other procedures requested by Plaintiff.

that "signals the consummation of an agency's decisionmaking process" and "gives rise to legal rights or consequences." COMSTAT, 190 F.3d at 274. Accordingly, the Court does not have jurisdiction to entertain this action, 5 U.S.C. § 704, and the Air Force's Motion to Dismissed is GRANTED.[7]

---

[7] The action would also be dismissed as not ripe for review, because Plaintiff has not received a rejection from the Air Force on her new or modified discovery requests. See Doe v. Virginia Dep't of State Police, 713 F.3d 745, 758 (4th Cir. 2013) ("a claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact 'remains wholly speculative.'"). It remains possible that the Air Force may accept her request to conduct an inspection of the filter on an Air Force base.

IV. CONCLUSION

For the foregoing reasons:

1. The United States Air Force's Motion to Dismiss [ECF No. 24] is GRANTED.

2. Plaintiff Patricia LaCourse's Motion to Enforce Subpoena Duces Tecum [ECF No. 1] is DENIED as moot.

3. Plaintiff Patricia LaCourse's Second Motion to Enforce Subpoena Duces Tecum [ECF No. 13] is DENIED as moot.

4. Defendant PAE's Motion to Require CT Scan Prior to Disassembly and Further Inspection is DENIED as moot.

5. All parties involved shall take steps to expeditiously resolve the matter at the agency level.

    a. Plaintiff and Defendant shall promptly respond to the correspondence from the Air Force dated September 29, 2017, including a clear statement of their discovery requests.

    b. The Air Force shall, within one month after the Parties' responses, make a final agency decision with regard to the Parties' stated discovery requests.

SO ORDERED, this Tuesday, November 14, 2017.

/s/
Marvin J. Garbis
United States District Judge